UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: __7/22/22__

TANGLE INC., )
)
    Plaintiff, )
)
v. ) Case No.: 1:22-cv-02350
)
THE INDIVIDUALS, CORPORATIONS, )
LIMITED LIABILITY COMPANIES, )
PARTNERSHIPS, AND )
UNINCORPORATED ASSOCIATIONS )
IDENTIFIED ON SCHEDULE A HERETO, )
)
    Defendants. )
)
)

## ~~PROPOSED~~ DEFAULT JUDGMENT AS TO DEFENDANT NO. __27__.

THIS CASE having been commenced by Plaintiff TANGLE, INC. against, *inter alia*, Defendant _____S. Wyatt_____ (Defendant No. __27__.) ("Defaulting Defendant"), using at least the domain name or online marketplace account ___https://www.amazon.com/sp?seller=a3nccxsb42kui9___ (the "Defaulting Defendant Storefront"), and Plaintiff having moved for entry of Default and Default Judgment against Defaulting Defendant;

This Court having entered, upon a showing by Plaintiff, a temporary restraining order and preliminary injunction against Defaulting Defendant that included a domain name disabling order and asset restraining order;

Plaintiff having properly completed service of process on Defaulting Defendant, the combination of providing notice via electronic publication or email, along with any notice that Defaulting Defendant received from domain name registrars and payment processors, being notice reasonably calculated under all circumstances to apprise Defaulting Defendant of the pendency of the action and affording them the opportunity to answer and present their objections; and

1

Defaulting Defendant not having answered the Complaint or appeared in any way, and the time for answering the Complaint having expired;

THIS COURT FURTHER FINDS that it has personal jurisdiction over Defaulting Defendant because Defaulting Defendant directly targets its business activities toward consumers in the United States, including New York, offering to sell and ship products into this Judicial District. Specifically, Defaulting Defendant is reaching out to do business with New York residents by operating one or more commercial, interactive Internet Stores through which New York residents can purchase products bearing counterfeit versions of products utilizing the TANGLE trademark, U.S. Trademark Registration No.: 1779055, and/or copyrights covered by U.S. Copyright Office Registration Nos. VA 120-368, VA 1-232-933, VA 1-271-045, VAu 35-392, VAu 35-391, VAu 35-390, VAu 35-389, VAu 35-388, and VAu 35-387 (the "TANGLE Copyright Registrations"); and

THIS COURT FURTHER FINDS that Defaulting Defendant is liable for willful federal trademark infringement and counterfeiting (15 U.S.C. § 1114), false designation of origin (15 U.S.C. § 1125(a)), copyright infringement (17 U.S.C. § 101 et seq.), and/or violation of unfair competition under New York common law.

IT IS HEREBY ORDERED that Plaintiff's Order to Show Cause Why Default Judgment and Permanent Injunction Should Not Be Entered is GRANTED in its entirety, that Defaulting Defendant is deemed in default and that this Default Judgment is entered against Defaulting Defendant.

Accordingly, this Court ORDERS that:

1. Defaulting Defendant, its affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with it be permanently enjoined and restrained from:

    a. using Plaintiff's TANGLE trademark, TANGLE Copyright Registrations, or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution,

2

        marketing, advertising, offering for sale, or sale of any product that is not a genuine TANGLE product or not authorized by Plaintiff to be sold in connection with Plaintiff's TANGLE trademarks and/or TANGLE Copyright Registrations;

b.   passing off, inducing, or enabling others to sell or pass off any product as a genuine TANGLE product or any other product produced by Plaintiff, that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's TANGLE trademark and/or TANGLE Copyright Registrations;

c.   committing any acts calculated to cause consumers to believe that Defaulting Defendant's products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d.   further infringing Plaintiff's TANGLE trademarks and/or TANGLE Copyright Registrations and damaging Plaintiff's goodwill;

e.   otherwise competing unfairly with Plaintiff in any manner;

f.   shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's TANGLE trademark and/or TANGLE Copyright Registrations or any reproductions, counterfeit copies, or colorable imitations thereof;

g.   using, linking to, transferring, selling, exercising control over, or otherwise owning the Defaulting Defendant Storefront or any other domain name or online marketplace account that is being used to

3

<ol start="" style="list-style:none">
<li>sell or is the means by which Defaulting Defendant could continue to sell counterfeit TANGLE products; and</li>
<li>h. operating and/or hosting websites at the Defaulting Defendant Storefront and any other domain names registered or operated by Defaulting Defendant that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing Plaintiff's TANGLE trademark and/or TANGLE Copyright Registrations or any reproductions, counterfeit copies, or colorable imitations thereof that is not a genuine TANGLE product or not authorized by Plaintiff to be sold in connection with Plaintiff's TANGLE trademark and/or TANGLE Copyright Registrations.</li>
</ol>

2. Any domain name registry for the Defaulting Defendant Storefront, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, within three (3) business days of receipt of this Order or prior to expiration of this Order, whichever date shall occur first, shall disable the Defaulting Defendant Storefront and make it inactive and untransferable until further ordered by this Court.

3. Those in privity with Defaulting Defendant and with actual notice of this Order, including any online marketplaces such as Amazon, eBay, PayPal, Wish, DHgate, or Payoneer, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing and Yahoo, web hosts for the Defaulting Defendant Storefront, and domain name registrars, shall within three (3) business days of receipt of this Order:

   a. disable and cease providing services for any accounts through which Defaulting Defendant engages in the sale of counterfeit and infringing goods using the TANGLE trademarks and/or Copyright Registrations, including any accounts associated with Defaulting Defendant;

        b.    disable and cease displaying any advertisements used by or associated with Defaulting Defendant in connection with the sale of counterfeit and infringing goods using the TANGLE trademarks and/or Copyright Registrations; and

        c.    take all steps necessary to prevent links to the Defaulting Defendant Storefront from displaying in search results, including, but not limited to, removing links to the Defaulting Defendant Storefront from any search index.

4.     Amazon.com and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant or the Defaulting Defendant Storefront from transferring or disposing of any money or other of Defaulting Defendant's assets.

5.     DHgate and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant or the Defaulting Defendant Storefront from transferring or disposing of any money or other of Defaulting Defendant's assets.

6.     ContextLogic, Inc. ("Wish") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant or the Defaulting Defendant Storefront from transferring or disposing of any money or other of Defaulting Defendant's assets.

7.     PayPal, Inc. ("PayPal") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant or the Defaulting Defendant Storefront from transferring or disposing of any money or other of Defaulting Defendant's assets.

8.     Payoneer, Inc. ("Payoneer") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts

connected to Defaulting Defendant or the Defaulting Defendant Storefront from transferring or disposing of any money or other of Defaulting Defendant's assets.

9. eBay, Inc. ("eBay") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant or the Defaulting Defendant Storefront from transferring or disposing of any money or other of Defaulting Defendant's assets.

10. AliExpress and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant or the Defaulting Defendant Storefront from transferring or disposing of any money or other of Defaulting Defendant's assets.

11. Ping Pong Global Solutions, Inc. ("Ping Pong") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant or the Defaulting Defendant Storefront from transferring or disposing of any money or other of Defaulting Defendant's assets.

12. Coinbase Global, Inc. ("Coinbase") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant or the Defaulting Defendant Storefront from transferring or disposing of any money or other of Defaulting Defendant's assets.

13. LianLian Global t/as LL Pay U.S., LLC ("LianLian") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant or the Defaulting Defendant Storefront from transferring or disposing of any money or other of Defaulting Defendant's assets.

14. AllPay Limted ("AllPay") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant or the Defaulting Defendant Storefront from transferring or disposing of any money or other of Defaulting Defendant's assets.

15. Union Mobile Financial Technology Co., Ltd. ("Union Mobile") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant or the Defaulting Defendant Storefront from transferring or disposing of any money or other of Defaulting Defendant's assets.

16. Alibaba and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant or the Defaulting Defendant Storefront from transferring or disposing of any money or other of Defaulting Defendant's assets.

17. Bank of China and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant, Defaulting Defendant's Online Marketplace Accounts or Defaulting Defendant's websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendant's assets.

18. Hyperwallet and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant, Defaulting Defendant's Online Marketplace Accounts or Defaulting Defendant's websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendant's assets.

19. JD.com ("JD") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant, Defaulting Defendant's Online Marketplace Accounts or Defaulting Defendant's websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendant's assets.

20. Joom and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant, Defaulting Defendant's Online Marketplace Accounts or Defaulting Defendant's

7

websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendant's assets.

21. Lakala and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant, Defaulting Defendant's Online Marketplace Accounts or Defaulting Defendant's websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendant's assets.

22. OFX and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant, Defaulting Defendant's Online Marketplace Accounts or Defaulting Defendant's websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendant's assets.

23. Paxful, Inc. and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant, Defaulting Defendant's Online Marketplace Accounts or Defaulting Defendant's websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendant's assets.

24. PayEco and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant, Defaulting Defendant's Online Marketplace Accounts or Defaulting Defendant's websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendant's assets.

25. SellersFunding and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant, Defaulting Defendant's Online Marketplace Accounts or Defaulting Defendant's websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendant's assets.

26. Shopify and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant, Defaulting Defendant's Online Marketplace Accounts or Defaulting Defendant's websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendant's assets.

27. Stripe and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant, Defaulting Defendant's Online Marketplace Accounts or Defaulting Defendant's websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendant's assets.

28. Walmart and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant, Defaulting Defendant's Online Marketplace Accounts or Defaulting Defendant's websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendant's assets.

29. Wise/TransferWise and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant, Defaulting Defendant's Online Marketplace Accounts or Defaulting Defendant's websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendant's assets.

30. World First UK Ltd. ("World First") and its related companies and affiliates shall, within two (2) business days of receipt of this Order, permanently restrain and enjoin any accounts connected to Defaulting Defendant, Defaulting Defendant's Online Marketplace Accounts or Defaulting Defendant's websites identified in the First Amended Schedule A from transferring or disposing of any money or other of Defaulting Defendant's assets.

31. Pursuant to 15 U.S.C. § 1117 and 17 U.S.C. § 504, Plaintiff is awarded statutory damages from Defaulting Defendant in the amount of fifty thousand dollars ($50,000.00).

32. All monies currently restrained in Defaulting Defendant's financial accounts, including monies held by Amazon, PayPal, eBay, Wish, DHGate, Payoneer, Ping Pong, Coinbase, LianLian, AllPay, Union Mobile, Alibaba, Aliexpress, Bank of China, Hyperwallet, JD.com, Joom, Lakala, OFX, Paxful, PayEco, SellersFunding, Shopify, Stripe, Walmart, Wise/TransferWise, and/or World First are hereby released to Plaintiff as partial payment of the above-identified damages, and Amazon, PayPal, eBay, Wish, DHGate, Payoneer, Ping Pong, Coinbase, LianLian, AllPay, Union Mobile, Alibaba, Aliexpress, Bank of China, Hyperwallet, JD.com, Joom, Lakala, OFX, Paxful, PayEco, SellersFunding, Shopify, Stripe, Walmart, Wise/TransferWise, and/or World First are ordered to release to Plaintiff the amounts from Defaulting Defendant's accounts within ten (10) business days of receipt of this Order.

33. Until Plaintiff has recovered full payment of monies owed by Defaulting Defendant, Plaintiff shall have the ongoing authority to serve this Order on Amazon, PayPal, eBay, Wish, DHGate, Payoneer, Ping Pong, Coinbase, LianLian, AllPay, Union Mobile, Alibaba, Aliexpress, Bank of China, Hyperwallet, JD.com, Joom, Lakala, OFX, Paxful, PayEco, SellersFunding, Shopify, Stripe, Walmart, Wise/TransferWise, and/or World First in the event that any new accounts controlled or operated by Defaulting Defendant are identified. Upon receipt of this Order, Amazon, PayPal, eBay, Wish, DHGate, Payoneer, Ping Pong, Coinbase, LianLian, AllPay, Union Mobile, Alibaba, Aliexpress, Bank of China, Hyperwallet, JD.com, Joom, Lakala, OFX, Paxful, PayEco, SellersFunding, Shopify, Stripe, Walmart, Wise/TransferWise, and/or World First shall within two (2) business days:

    a. Locate all accounts and funds connected to Defaulting Defendant, or the Defaulting Defendant Storefront, including, but not limited to, any accounts;

    b. Restrain and enjoin such accounts or funds from transferring or disposing of any money or other of Defaulting Defendant's assets; and

   c. Release all monies restrained in Defaulting Defendant's accounts to Plaintiff as partial payment of the above-identified damages within ten (10) business days of receipt of this Order.

34. Until Plaintiff has recovered full payment of monies owed by Defaulting Defendant, Plaintiff shall have the ongoing authority to serve this Order on any banks, savings and loan associations, or other financial institutions (collectively, the "Financial Service Providers") in the event that any new financial accounts controlled or operated by Defaulting Defendant are identified.  Upon receipt of this Order, the Financial Service Providers shall within two (2) business days:

   a. Locate all accounts and funds connected to Defaulting Defendant, or the Defaulting Defendant Storefront, including, but not limited to, any accounts;

   b. Restrain and enjoin such accounts or funds from transferring or disposing of any money or other of Defaulting Defendant's assets; and

   c. Release all monies restrained in Defaulting Defendant's accounts to Plaintiffs as partial payment of the above-identified damages within ten (10) business days of receipt of this Order.

35. In the event that Plaintiff identifies any additional online marketplace accounts, domain names, or financial accounts owned by Defaulting Defendant, Plaintiff may send notice of any supplemental proceeding to Defaulting Defendant by email at the email addresses identified by Plaintiff and any email addresses provided for Defaulting Defendant by third parties.

36. The five thousand-dollar ($5,000) bond posted by Plaintiff, including any interest minus the registry fee, will be released to Plaintiff or their counsel upon notice to the Court that all non-defaulting defendants have been dismissed from the case.  The Clerk of the Court is directed to return the bond previously deposited with the Clerk of the Court to Plaintiff or its counsel once such notice of provided.

Dated: July 22, 2022

_____
HONORABLE VALERIE E. CAPRONI

12